Second case in which we'll hear oral argument this morning is number 2008-1354, Grant County v. United States. Mr. Addy. Mr. Addy. 80, sir. 80, I'm sorry. I just want to check, you've chosen not to reserve any rebuttal time, is that correct? I only reserve five minutes, sir. Oh, okay. So you want your five minutes on your rebuttal. Yes. Let's see. Okay, good. Thanks. So ten and five. Okay. Just wanted to make sure on that. Glad we, glad I checked. Yes, sir. So go ahead whenever you're ready. May it please the court. I'm Ronald Addy, counselor for the appellants, Grant County Black Sand Irrigation District and Williamson Land Company. Standing with me is Ronald Christensen who litigated this case before the trial court with my assistance. Sir, this case presents, we think, some fairly simple straightforward issues. It also presents a very not straightforward issue as far as I'm concerned at least. That's my problem but you can straighten me out if it is straightforward. And that is having to do with our jurisdiction. Okay. You present this case to us in part as a Little Tucker Act case and therefore your contention is we have jurisdiction because the district court had jurisdiction in part under the Little Tucker Act but it was not a big Tucker Act case and therefore the Little Tucker Act claim was properly before the district court but it also wasn't an APA case which would deprive us of jurisdiction if there weren't a Little Tucker Act claim. Correct. So my question is what is the relief that you're seeking that is Little Tucker Act type relief and not the more frequently encountered APA type injunctive relief? What we're seeking here, sir, is Black Sands Irrigation District has a right to management under 498 of the Reclamation Act and they should have gotten that back in 1977 when the irrigation district was first organized. In the year that they're granted management, they'll be entitled to recover administrative costs that are duplicated because as it is now, they're paying administrative costs that under the act they would recover directly and would not be remitted to reclamation. Well, those costs are being remitted to reclamation and retained by the Black Sands Irrigation District. What was the date that you say that they should have been? Since 1977. Since 1977. So each year there's been an accumulation of these additional costs? Right, but we're only claiming it in the year that we get, that the irrigation district gets management. Who gets management? Are you claiming there's a back payment due to you? We're claiming that we are only entitled to $10,000 under the Little Tucker Act and we waive anything in excess of that. We admit that. No, I think Judge Bryson is saying, what is the basis for your amount that you're claiming? Is it a reimbursement of an overpayment? It is the fact that we are paying, that we've already paid in whatever year we get management, we've already paid administrative costs. We're already out of pocket, we've already paid those, and now we want to say to reclamation, give those back to us. We're out of pocket for those. So you say at the end of the day here, you're entitled to have a check cut to you for a certain amount of money predicated on overpayments in the past. Predicated on the fact that we weren't allowed to retain them because we didn't have management and the other element being that we're going to have to go back and look through all of these records. When I say we, the irrigation district is going to have to go back and reorganize and comb through all of these individual license records and reorganize them for collective administration by the irrigation district. That will happen in the year that they get management. They will incur substantial consultant fees to do that, extra costs. And so we're saying that these administration costs that we're incurring when we get management. That's all in the future. These are all costs you're going to incur in the future? Those are all costs that are real, that have accrued to date, year to year. And like we say, we're limiting the claim, and they will continue to accrue each and every year until we get management. But we're limiting it out of that total amount since 1977. Of those duplicate administration costs, we're only claiming $10,000 under the Little Tucker Act. That's the claim. And what again exactly, Mr. Eaddy, would be the trigger that would entitle you to the payment of that money? In other words, what has to happen in order for you to be entitled to that money? You have to get management. And the way you say, how do you say you get management? You get management by getting a favorable ruling saying that these are repayment contracts. I'm sorry, that they're what? That they are repayment contracts. Once the merits are determined, then what is it? I'm sorry to interrupt you, but I didn't want to lose my train of thought in response to what you were saying. You're saying under your interpretation of these, what they're now called licenses? Right. A 45 HE license agreement. Right. You're saying that these, quote, licenses, close quote, are repayment contracts, right? Yes, sir. And you're saying that because they're a repayment contract, you're entitled to management, right? We're entitled to a number of entitlements under the reclamation act. Just to follow through on the little Tucker Act issue. You're entitled to management. Correct. And management gives you the right to the repayment of this money that you have paid. Well, once we get management, that claim ripens. Once we get management, then we're in a position to say, look, we've been shelling out. So you get repayment of money you've paid and you're saying you're not claiming over $10,000. We're not claiming over $10,000. That's the line of reasoning that gets you from the license agreement to the money claim is what you're saying. Correct. Okay. We think that now to get to the basis of that management claim as to whether these are repayment contracts, it's our position that unambiguously and in a manner that leaves the secretary no discretion, reclamation law requires that these be repayment contracts, that these 45 AG license agreements that are an issue in this case by these 85 landholders through the Grant County Black Sands Irrigation District must be repayment contracts. The 1939 Act and the 1932 Reclamation Reform Act both clearly require that. 45 AE of the 1939 Act defines a repayment contract as any contract which repays construction charges. 45 AD, the preceding subsection in that same definitional part of the 39 Act, does make an exception from that for water rental contracts. And in fact, that is cited in the Bureau's brief. But what they fail to cite is the remaining part of 45 AD. And that says that if in substance, that if those construction repayments are covered into the construction account of reclamation, then it's a repayment contract. It's undisputed that in this... What provision is that again? That's 485 AD. It's undisputed that in this case, from its inception of these contracts, that the Black Sand Irrigators repayments of construction charges to reclamation have always been covered into the construction account of reclamation. There's no dispute about that. So as a matter of definition, under the 39 Act, these are repayment contracts. If we turn to the 1982 Reclamation Reform Act and we looked at 390 BBA, it likewise says that any repayment contract or any water service contract that repays construction charges is a contract under the 1982 RRA. That takes us into 390 CC. 390 CC says that any contract entered into by reclamation after October 19, 1982 must be a contract under 390 CC. In other words, it must be a contract that repays construction charges. Once again, it's undisputed in this case that reclamation required these 85 irrigators to amend their contracts and to amend them to specifically state that the 1982 Reclamation Reform Act and their regulations were part of those contracts. Tell me exactly what, in your view, 485HE covers with respect to contracts within an organization. 485HE, in fact, is an exception from the requirement for contracts with organizations. 485HE can apply to individuals. So you're saying no organization can be within 485HE? 485HD is for organizations like irrigation districts. Let me make sure I understand. You're saying, therefore, 485HE cannot apply to an organization? No, I'm saying it can apply to either individuals or districts. Give me an example, talking about organizations only, of a contract that's appropriately a water service contract under 485HE, in your view. I think these contracts are... Well, 485HE deals only with supply works. 485HE is not designed to deal with distribution works, canals, laterals, those kinds of things. If an organization is only using that part of a project, the dam and related works that supply water to the organization, and if Reclamation has not built any canals, laterals, irrigation ditches to supply surface irrigation to that organization, then they would only have a 485HE contract. And in fact, if you read the last sentence of 485HE, it specifically says, if you get to the point, and I'm paraphrasing, if you get to the point where you've got to use distribution works, canals, laterals, those kinds of things, then you've got to go over and also do an HD contract for those. And if we look at the Flint decision, that's the decision that says that a 485HE can apply to both individuals and districts. Have I answered your question? I'm still not sure I understand. If you have a contract under 485... I'm not sure what you view as the universe of cases. 485HE says one of the charges is appropriate charges under 485HE would be construction-related charges. Correct. Now, what would be an example of a 485HE contract with an organization that includes construction charges, related charges, that you would say, well, that's not a repayment contract and doesn't belong under D? Well, I don't accept your premise, sir. You can say none, if you like, but I'm not... There's no premise to my question. I think my question is just is the answer there is an example or there are no such examples, it's a null set. No, I'm not sure I understand your question. As I understand 485HE, it only applies to supply works and the construction component there is for repayment of a deemed amount set by the Secretary, in this case $1.70 per year, a deemed amount set by the Secretary to repay that construction charge obligation for building the dam and drawing water from it. All right. That would be the appropriate construction charge that would be included in a 485HE contract, distinguished from a 485HD, which would include not only supply works but also the distribution works. And so you would have sharp construction charges in there for both parts of the project, supply and distribution. 485HE would only be repayment of supply works. And getting back to the definitional section of 485AE, because we repay construction charges, and those construction charges under 485AD are covered under Reclamation's construction account by definition. Our 485HE contracts are repayment contracts. And so my point is that a 485HE contract is another type of repayment contract, and that's what Flint recognizes, that the in lieu of language is talking about a repayment contract that deals only with supply works. It's not dealing with supply and distribution. 390CC, which is the 82 Reclamation Reform Act, says that if you've got a contract that meets the definition of 390BBA, which is a contract that repays construction charges, then all provisions of the Reclamation Reform Act of 1982 apply to that contract. And that's us. We've got repayment of construction charges, therefore all provisions of the Reclamation Reform Act apply to these 45HE contracts. 390MM specifically states that if you repay construction charges through periodic payment plans for the specified term of a contract, then the contract must pay out and the excess land restrictions imposed by 390CC must be lifted. And that's the nub of the dispute here between Reclamation and these irrigators. Reclamation is saying your contracts never pay out. You're going to pay this $1.70 for infinity as long as you're on this land. 390MM says, wrong. If these contracts, and if you read the contract's terms, they specifically provide for that. If these contracts pay out construction charges by regular periodic payments for specified terms, they must pay out. And then you must lift the excess land restrictions. And that's why on December 6, 2002, these irrigators wrote this letter to Reclamation saying, we want to buy more land. You're into your... In fact, you've used up your rebuttal and gone over your total time. But you had a number of questions from the panel. So we'll restore the full five minutes of your rebuttal. So you'll have that. We'll hear from the government. Mr. Brabender? Have I pronounced it correctly? You did. Okay. You'll have whatever time that you need in addition to the total amount that Mr. Aidey's going to have, which is about seven minutes extra if you need it. Okay, thank you. May it please the court, Alan Brabender on behalf of the United States. Well, as a threshold matter, we should be arguing the day in San Francisco instead of here in Washington, D.C. Well, there are certainly three different places you could be. You could be upstairs in the Court of Federal Claims if this is not a little Tucker Act but a big Tucker Act case. You could be in San Francisco if this is properly viewed as solely an APA case. You say it isn't even an APA case, but you say if it's anything, it's an APA case. Or you could be here if at least one of the claims, as I understand our jurisdictional statute, at least one of the claims is a little Tucker Act claim. Now, why isn't Mr. Aidey correct? He says in his complaint that $800 is owed to each of these plaintiffs, the potential plaintiffs, the class plaintiffs, for the past acts, unlawful acts of the Bureau. Why isn't that enough to put him under the little Tucker Act? Okay, well, Your Honor, I think we should turn to the complaint. The Second Amendment complaint is in the Joint Appendix. Paragraph 61 is the one that I was referencing. Right. I'm familiar with Paragraph 61, Your Honor, but in order to have little Tucker Act jurisdiction, they also have to have a trigger. They have to have a cause of action that would allow for money damages. So if we turn to the causes of action that they have pled in their complaint, which I believe start at page 149. 149, yes. The first cause of action is an APA cause, which by definition does not permit money damages. 5 U.S.C. 702 says an APA claim cannot seek money damages. The second cause of action is for reformation of contract. Reformation of contract is an equitable claim. The third cause of action, which is mandamus, again, equitable in character. The fourth cause of action is for a resulting trust, which is an equitable device to enforce restitution or to avoid unjust enrichment, which are, again, classic equitable remedies. The fifth cause of action is for quiet title, which does not allow for money damages, but involves disputes to title to real property. Not one of these causes of action would allow for money damages. They're all claims in equity. This court, therefore, does not have Little-Tucker Act jurisdiction. The plainest theory of the case, as I understand it, is that you've put them under E. They should not be subject to those kinds of charges, and therefore, one consequence of that is that you've overcharged them, just as if this were a tax case and you had put them under the alternative minimum tax and they didn't belong there and they'd overpaid their taxes by $500 and they want the money back. Why isn't the gist of their complaint that there is a wrongful application of the statute enough to give them a right to recovery under perhaps an unlawful exaction theory, which is one of the bases for Little-Tucker Act jurisdiction? First of all, they haven't declared a cause of action that would allow that. Let's suppose we read the complaint liberally to allege an unlawful exaction. What they're essentially seeking is restitution here or avoidance of unjust enrichment. Unlawful exaction sounds a lot like restitution, but you would agree with me that that's a legitimate ground for Tucker Act jurisdiction, correct? I would have no reason right now to dispute that, Your Honor, no. Oh, well, okay, take my word for it. Yes. Okay. But what they're essentially saying is, or what they are saying, I think, is that they have overpaid over a series of years and the United States, therefore, has been unjustly enriched by these overpayments and that they're entitled to a refund of these overpayments, which is akin to restitution. That's what you have in every tax case that we have coming out of the Court of Federal Claims is exactly those facts. You pay the tax that the IRS says you owe and then you sue for a refund. You've been overcharged. Well, what they're also saying, Your Honor, is, I mean, I would analogize this case to Bowen v. Massachusetts or maybe Doe v. United States where in Bowen, the plaintiff was claiming that she was due Medicaid benefits based on the statute. In Doe, I believe the plaintiff was saying that the Department of Defense should have paid for her abortion. In both cases, they're claiming that the statute entitles them to money, to the payment of money. And that's essentially what the plaintiffs are arguing here. And in both cases, Bowen and Doe, the courts, the Supreme Court and this court, found that the plaintiffs were seeking equitable relief in the form of payment of money and not money damages. Well, Bowen said that the APA action was not foreclosed because it was necessarily an action for damages. But it didn't say that there couldn't have also been a Tucker Act claim. It just said that the APA was not precluded. It didn't say that they were mutually exclusive with respect to the Tucker Act. Maybe not, but I think Doe did. And even if they have asserted a proper little Tucker Act claim in their complaint, they did not assert one in the district court. We moved to dismiss their complaint in total. And nowhere in their motion to dismiss, or their opposition to our motion to dismiss, did they ever form the United States or the district court that they had a little Tucker Act claim. In fact, they argued essentially the opposite, that they were only seeking declaratory and injunctive relief. And we believe that is a waiver or at least an abandonment of the right to assert the little Tucker Act. And I would be happy to move on to the merits if this court would like. Otherwise, I would just sit down. That's fine. Say what you want to say, Mr. Brewer. Move to the merits. OK. Well, if this appeal is heard by this court, it should uphold the district court's judgment dismissing this case for a lack of subject matter jurisdiction. As the district court correctly held, the plaintiffs have failed to demonstrate, as they must, a waiver of sovereign immunity under the APA or any other statute that allows them to proceed with their file. I appreciate that you make two arguments with respect to the technical APA issue, which are important questions and we would have to attend them. But going through those issues and getting to the merits of the underlying contract slash statutory construction argument, would you give us your take on the argument that is made with respect to the interplay of D and E? That is to say, why do you think the plaintiffs are wrong in saying that they should have been treated as having a repayment contract as opposed to a water services contract? Well, because they don't meet the definition of the term repayment contract as used in reclamation law. 45A does provide the definitions, as the plaintiff said this morning. And 45AE defines a repayment contract as a contract for the payment of construction charges. We cross-referenced that definition with the term construction charge defined at 45AD. And it says the amount of principal, it defines construction charge as the amount of principal obligations payable to the United States except for amounts for water rental. The plaintiff's contracts under 45AHE fall outside of that definition because the contracts contain no principal repayment obligation for one and are only water rental agreements pursuant to 45AHE. Now this morning for the first time they make some suggestion, which we have never heard before, that under D their contracts do not include construction charges or whatever their argument is because it is undisputed apparently that these charges are not covered in the principal sums of construction counts by the Bureau of Reclamation. Again, this is an argument I've never heard before. I would dispute it. So that's the essential difference. Their contracts do not fall within the definition of a term repayment contract as used in reclamation law. It's just really that simple. But we're not even really there yet because what they have to show is a waiver of sovereign immunity here. And the only one that applies is under the APA. And under APA section 706.1, to assert a proper claim there, they have to identify a clear cut ministerial duty that they can point to within any provision of reclamation law that says the Bureau must treat their contracts as repayment contracts. But that's their argument. That's their argument. What you seem to be saying, and correct me if this is a mischaracterization, but you seem to be saying because they are wrong on the merits of their claim that the Bureau was obliged to treat this contract in a certain way, different from the way that it was treated, because they're wrong on that, you say, therefore there wasn't any duty on the part of the Bureau to act consistently with their demand and therefore there's no APA jurisdiction because there's no waiver of sovereign immunity. Doesn't that simply run to the merits and look back and then say, therefore, no jurisdiction? Well, sure, the merits are part of it. But the duty has to be clear cut. Well, but their argument is there is a clear cut duty. Right? Our argument is there is no duty. I know. That's a merits argument. But even, I mean, I think there's at least some confusion, I think, expressed by this court this morning about whether or not these are repayment contracts or whether or not there's an obligation to treat plaintiff's contracts as repayment contracts. To the extent there is any confusion, it means there's not a clear cut duty. And therefore, this court doesn't have jurisdiction. Do you mean that we wouldn't have jurisdiction to decide any case that we hadn't already decided that the plaintiff wins? Well, APA section 706.1 is a very specific provision of the APA. It is most often used in- Wait, wait, wait, wait, wait, wait. I want to make sure we're on the same page here. If there is an absolute duty in this case, they win. Right? Because- If it is clear cut, sure. If there's a clear cut duty, they win. Are you saying that we don't have jurisdiction unless we're prepared to say they win this case? No, I think there could still be a duty and it not be clear cut. You mean there's a non-clear cut duty? Whatever that means. Sure, I think it's possible. It gives us jurisdiction. If you have a duty, I've always thought a duty requires that it be clear cut. No, they could have brought a claim, for instance, under APA section 706.2. No, no, I'm talking about 706.1. Right, so no, there has to be a clear cut duty. So they have to win the case in order for us to have jurisdiction? No, they have to show that there's a clear cut duty. Yeah, but if there is a clear cut- Now, if there's not a clear cut duty, there may still be a duty. Please, please, please, stop. Okay. When a judge is asking a question, please, you have to really- Hold up. I'm sorry. If there is a clear cut duty, then the answer is they've won the case, correct? Yes. Right, and you say there's no jurisdiction unless there's a clear cut duty. Under APA 706.1. Under 706.1. So what you're saying is, if I understand you, is that the only way we have jurisdiction, the only thing we have jurisdiction to do under 706.1 is to rule in their favor. Otherwise, we have to say we have no jurisdiction. Yes. Okay. And similarly, with regard to 706.2, in order for this court to have jurisdiction, they must identify a final agency action which is reviewable by this court, which they have never done. And therefore, this court also would lack jurisdiction under APA 706.2. If the court has no further questions. Okay, thank you, Mr. Thank you. Mr. Aidey, you have, as I indicated earlier, your five minutes of rebuttal. Just briefly, we raised the issue of these construction repayment being covered into the construction account of reclamation at page 12 and 13, paragraphs 16 and 17 of our principal brief. So Mr. Brabender is wrong when he says this is the first time he's heard of that. Pages 12 and 13, paragraphs 16 and 17 of our principal brief, we specifically refer to AD 45AD and say, he's just wrong in his interpretation. These charges were covered in. They're repayment contracts by definition. There's no discretion. There's no ambiguity. There's no doubt about that. Secondly, if he's going to cite Doe, we would suggest that we come within the Bratel case cited to and referred to in Doe. And that is, we've already paid the money. We're not like Ms. Doe where she got the abortion and got the injunctive relief and now is seeking the money. Ms. Bratel had already paid the money, gotten the abortion, paid for it herself and then sought recovery later. That's where we're at with our administrative charges here. We've already paid it each and every year and we're seeking recovery. And so that is a Little Tucker Act claim under the authority of Doe. We do plead a Little Tucker Act claim. At page 33 of our second amendment complaint joint appendix, page 157, paragraph 6, we plead as follows. Quote, shall in the form of payment to the GCBSID, receive an aggregate total sum of $10,000 in damages against the United States for the United States advanced collection of administrative charges for administration of the Quincy groundwater subarea artificially stored groundwater program from the plaintiff class in the year in which the GCBSID takes over the administration and management of the program. And what's the cause of action that entitles you to that relief? We have a claim under 498 for management. We have a right to management. They've deprived us of that and because of that we've had to incur duplicate administrative costs. We've had to pay them for administration and the district has had to pay its own administration costs plus a future cost will be the cost of the consultant. But those yearly administration costs have gone on now since 77 or thereabouts, 76 or 77. That's the source of that cause of action. That's where we've been damaged. You seem to have a right to management because you have a repayment contract. Exactly, sir. And 490CC of the 82 Reclamation Reform Act, once again, all provisions of reclamation law apply. 490MM says this contract must pay out. It has a specified term. It has periodic payments for a specified term. It's got to pay out. And the reclamation simply can't do this. They can't say you're going to pay a buck 70 an acre until the rivers run dry. Now, as to our claim, we've got a little Tucker Act claim for those administrative costs. We have a claim for the buck 70 that we've paid beyond that which we should have when we paid out our $85 per acre total charge. And that's the number that the contract sets as the total. You pay up to $85. We have a claim for excess O&M charges that they have assessed against us. And so we have got three different kinds of claims here for money, one of which is the little Tucker Act claim. He mentions that we didn't assert our little Tucker Act claim in the district court. At our supplemental appendix, at paragraph, at page 6, at footnote 3, we specifically refer to the little Tucker Act claim and the fact that because of that, a nip on steel applies and that the merits of this case are inextricably intertwined with jurisdiction. Where is that, excuse me, Mr. Addy, where is that in... This document is your supplemental appendix. Where is the... Tab B. Tab B. Page 6, footnote 3. Footnote 3, we talk about our little Tucker Act claim. We also disputed the little Tucker Act claim on three different occasions. I mean, pardon me, I'll correct that. We also disputed their claim that we were limiting ourselves to equitable relief like you just heard from Mr. Brabrander three different times in our briefing before the district court and Mr. Brabrander tried to say, well, you're only talking about equitable claims and we said, we are talking about all claims for relief pled in our complaint and we specifically talked about claims for relief on three different occasions. So we did raise our little Tucker Act claim, the United States never responded. Simply no response to that. Okay. Well, thank you, Mr. Addy. Thank you, sir. And thank you again, Mr. Brabrander. The case is submitted.